# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 6502 | **DATE** | 9/6/2002 |
| **CASE TITLE** | John Klaczak et al vs. Consolidated Medical Transport | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

• (10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, we deny the motions of Loretto Hospital [117-1] and Holy Cross Hospital [115-1] to dismiss the relators' Second Amended Complaint. We also deny the motion of defendant's [103-1]. Finally, we deny the motion of the Estate of John Daley, Jr. to dismiss [105-1]. This case is set for status on 9/24/2002 @ 9:00 a.m.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 09 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TSA | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

JOHN KLACZAK and JEFF SHARP,           )
Individually, and ex rel. UNITED       )
STATES OF AMERICA, and THE             )
STATE OF ILLINOIS,                     )
                                       )
                          Relators,    )
                                       )     No. 96 C 6502
        vs.                            )
                                       )     Judge Wayne R. Andersen
CONSOLIDATED MEDICAL                   )
TRANSPORT, INC., d/b/a COMED           )
TRANSPORT, et al.,                     )
                                       )
                          Defendants.  )
_____  )
                                       )
UNITED STATES OF AMERICA,              )
ex rel. Jeff Sharp,                    )
                                       )
                          Plaintiffs,  )
                                       )
        vs.                            )
                                       )
CONSOLIDATED MEDICAL                   )
TRANSPORT, INC., d/b/a COMED,          )
et al.,                                )
                                       )
                          Defendants.  )

## MEMORANDUM, OPINION AND ORDER

In this *qui tam* action, plaintiff relators, Jeff Sharp and John Klaczak ("relators"), bring

this action individually and on behalf of the United States. Relators, two former employees of

defendant Consolidated Medical Transport, Inc.,("CoMed"), have filed suit against CoMed,

Tower Ambulance Service, Inc., Daley's Ambulance Service, Ltd, John Daly III, Estate of

John Daly, Jr., Brian Witek, Richard Witek, Thomas Wappel, St. Bernard Hospital ("St. Bernard"), Mount Sinai Medical Center of Chicago ("Mount Sinai"), Jackson Park Hospital, Trinity Hospital, South Shore Hospital, South Suburban Hospital, Holy Cross Hospital ("Holy Cross"), Bethany Hospital, St. James Hospital, Loretto Hospital ("Loretto"), and other "John Doe" medical providers.

Plaintiffs allege that defendants have engaged in a scheme to defraud the United States by deliberately billing to Medicare the cost of ambulance services for patients for whom the services were not medically necessary and, therefore, should not have been paid by Medicare. Plaintiffs also allege that defendant CoMed provided kickbacks to the medical providers in exchange for referrals of Medicare patients in violation of the Anti-Kickback Statute and, therefore, they are liable under the False Claims Act ("FCA").

The United States has intervened in part of the case and filed an Amended Complaint of its own against CoMed and its officers. Defendants CoMed, Tower Ambulance Service, Daley's Ambulance Service, John Daley, III, Thomas Wappel, the Estate of John Daley, Jr. and Brian Witek have moved to dismiss Counts III and IV of the United States' Amended Complaint. Defendants Holy Cross Hospital and Loretto Hospital have moved to dismiss the Second Amended Complaint filed on behalf of the plaintiff relators. Defendant Estate of John Daly, Jr. has moved to dismiss the United States' Amended Complaint and the relators' Second Amended Complaint. For the reasons stated below, we deny defendants' motion to dismiss Counts III and IV of the United States' Amended Complaint, and we deny defendants Holy Cross' and Loretto's motion to dismiss the relators' Second Amended Complaint. Further, we deny the motion to dismiss filed by the Estate of John Daly, Jr.

## BACKGROUND

Relator Sharp was employed by CoMed as an emergency medical technician and dispatcher. Klaczak was employed as the General Manager of Stat, Inc., an ambulance company, until its sale to defendant Tower Ambulance Service in February of 1994.

As set forth in the United States' Amended Complaint and relators' Second Amended Complaint, the Department of Health and Human Services ("HHS") administers, through the Health Care Financing Administration, the Supplementary Medical Insurance Program for the Aged and Disabled, more commonly known as Medicare. Medicare is a federal health insurance program for people who are 65 years of age or older and for others who qualify because they have certain disabilities. HHS administers Medicare in Illinois and Indiana through a private insurance contract. Those private insurance contractors review claims for reimbursement submitted by Medicare providers and make payments on claims which they find eligible for reimbursement from federal funds.

Illinois and Indiana have established their own Medicaid programs which pay for the reasonable and necessary medical costs incurred by indigent citizens who have qualified to receive aid. The federal government reimburses the state Medicaid programs at a fifty percent rate.

Both the Medicare and Medicaid programs reimburse the cost of ambulance transportation to the provider if the patients transported are infirm or otherwise unable to travel. However, neither program reimburses for any other mode of transportation or for the ambulance transportation of individuals who could reasonably travel by another means.

The Medicare programs reimburse 80% of the cost of ambulance travel directly to the ambulance provider. The remaining 20% is the obligation of the beneficiary and is termed a "co-payment." However, if a beneficiary is admitted into the hospital, the hospital must pay the ambulance provider and then Medicare is required to reimburse the hospital.

Plaintiffs allege that CoMed, which includes defendants Consolidated Medical Transport, Tower, and Daley's Ambulance Service, fraudulently filed claims requesting reimbursement for providing ambulance transportation to individuals who did not medically need to be transported by ambulance. Plaintiffs allege that CoMed fraudulently sought payment for these individuals. Plaintiffs allege that CoMed knowingly filed tens of thousands of false claims over the years.

Plaintiffs also allege that CoMed entered into exclusive contracts with hospitals. As an incentive, CoMed offered to transport in-patient individuals at prices which were allegedly a "mere fraction of that which Medicare reimbursed." CoMed allegedly offered to transport in-patients at rates below CoMed's cost so that hospitals would exclusively use CoMed to service out-patient transportation. Relator plaintiffs allege that CoMed entered into this agreement with numerous hospitals who have been named as defendants.

The relators' complaint alleges violations of the False Claims Act, 31 U.S.C. § 3729(a)(1), and the Illinois' Whistleblower Reward and Protection Act, 740 ILCS 175/3. In Count I, relators allege that CoMed violated the False Claims Act by knowingly presenting medically unnecessary claims and, thereby, defrauding the United States. In Count II, relators allege that CoMed violated the Whistleblower Act. Count III alleges a violation of the False Claims Act against the Estate of John Daley, Jr., John Daly, III, Brian Witek, Richard Witek,

4

and Tom Wappel. Count IV alleges a violation of the Whistleblower Act against the Estate of John Daley, Jr., John Daly, III, Brian Witek, Richard Witek, and Tom Wappel. Count V alleges a violation of the False Claims Act against the hospital defendants. Finally, Count VI alleges a violation of the Whistleblower Act against the hospital defendants.

As provided for in the False Claims Act, relators filed this *qui tam* action under seal and served it upon the United States. 31 U.S.C. §3730(b)(2). The United States then reviewed the relators' allegations and decided to intervene in part of the suit. 18 U.S.C. §3730(b)(3). The United States subsequently filed its Amended Complaint. In the Amended Complaint, the United States repeats many of the allegations contained in the relators' Second Amended Complaint. The United States alleges that CoMed has participated in the Medicare ambulance program since March 31, 1995. The United States further alleges that defendants knowingly defrauded Medicare by transporting individuals to hospitals knowing that such ambulance transportation was not medically necessary. The United States alleges that the defendants conducted this unnecessary transportation as a part of a planned scheme to defraud the government. Based on an audit of a statistical sample of patients, the United States alleges in its complaint that 48% of all the claims billed by defendants to Medicare were unnecessary and should not have been paid. The United States then conducted a second audit of a statistical sample of defendants' claims and alleges that 67% of the claims were medically unnecessary.

In Count I of its Amended Complaint, the United States alleges that the submission of claims which defendants knew were to reimburse medically unnecessary transports constitutes a violation of the False Claims Act. In Count II, the United States alleges that defendants

violated the False Claims Act by making false records and statements to obtain payment from the United States. As a result of the alleged fraud, the United States claims actual damages in the amount of $8,971,580.00, and further claims that the defendants are liable under the treble damages provision of the False Claims Act. Counts III through V are common law counts, including payment by mistake of fact (Count III), unjust enrichment (Count IV) and common law fraud (Count V).

## DISCUSSION

When deciding a motion to dismiss, we consider all of the allegations of the complaint to be true, and view all well-pleaded facts and any reasonable inferences drawn from the facts in the light most favorable to the plaintiff. *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1219 (7th Cir.1994). Dismissal is proper only if it is clear from the complaint that no set of facts consistent with its allegations would entitle the plaintiff to relief. *Hishon v. King & Spaulding*, 467 U.S. 69 (1984). With these standards in mind, we turn to defendants' challenges to the sufficiency of the complaints before the Court.

### I. Holy Cross' and Loretto's Motions

On August 3, 2001, this Court dismissed Counts II and III of the relators' First Amended Complaint and allowed relators leave to amend their complaint in conformity with that opinion. In their Second Amended Complaint, relators name Holy Cross and Loretto as additional defendant hospitals. In Count V, relators allege that Holy Cross and Loretto violated the False Claims Act ("FCA"), 31 U.S.C. 3729(a)(1), as a result of an agreement for ambulance services with CoMed that allegedly violated the Anti-Kickback Statute ("AKS"), 42 U.S.C. 1320a-7b(b)(1)(A) and 1320a-7b(b)(2)(A). In Count VI, relators allege that Holy Cross and Loretto

6

violated the Illinois Whistleblower Reward and Protection Act, 740 ILCS175/3 for the same activity. The United States has declined to prosecute this action.

Specifically, in Count V of the Second Amended Complaint, relators allege that Holy Cross and Loretto are liable under the False Claims Act because they allegedly contracted for, and accepted, illegal remunerations from CoMed in the form of discounted rates for ambulance transports for which Holy Cross and Loretto were responsible under Medicare Part A. Relators allege that CoMed gave Holy Cross and Loretto these discounts in exchange for the hospitals' referral of Medicare Part B ambulance transports to CoMed.

Relators further allege that Holy Cross and Loretto knowingly concealed the alleged kickback scheme from Medicare because such a disclosure would result in a denial of all claims in connection with the referrals of Part B transports to CoMed. Relators further claim that the United States incurred damages as a result of the false claims filed by CoMed and that Holy Cross and Loretto should be liable for the total amount of those claims.

In Count VI, relators repeat the same allegations as described above and claim that Holy Cross and Loretto are liable under the Illinois Whistleblower Reward and Protection Act for claims submitted by CoMed to the Illinois Department of Public Aid, the state agency which administers the Illinois Medicaid program. Relators also allege that Holy Cross and Loretto knowingly concealed its alleged kickback scheme with CoMed from the Illinois Medicaid program.

In its motion to dismiss, Loretto first argues that the contracts between it and CoMed do not contain a discount and, thus, the relators' allegation that the contract between Loretto and CoMed established an improper kickback scheme is not supported by the language of the actual

7

contract between the parties. Specifically, Loretto claims that the fee schedule attached to the contract does not reference any discount.

Relators argue that, although the fee schedule attached to the contract does not set forth a specific discount or indicate what the non-contracted rates are, the costs stated are discounted from the then current retail rates. Relators argue that the Loretto fee schedule lists costs that are identical to the discounted costs charged by CoMed to the other hospitals, the only difference is that the Loretto fee schedule fails to list the non-contracted prices as well. Viewing the allegations in the light most favorable to the relators, as we must, we find that the relators have properly alleged a cause of action at this point in the litigation.

Next, Holy Cross and Loretto argue that their contracts with CoMed contain a permissible discount arrangement. Holy Cross and Loretto contend that the arrangement with CoMed fits within the discount "safe harbor" established by HHS. However, the discount safe harbor specifically excludes "[a] reduction in price applicable to one payor but not to Medicare or a State health care program." See 42 C.F.R. § 1001.952(h)(3)(iii). Accordingly, because the discount arrangement allegedly contained in the Holy Cross /Loretto and CoMed contracts only provides for a discount to Holy Cross and/or Loretto and not Medicare or Medicaid, the arrangement would not fall into the discount safe harbor.

Loretto and Holy Cross next argue that the relators have not alleged that the hospitals' alleged false certifications were material to the government's decision to pay the claims at issue. However, we find this argument to be without merit because the relators have alleged that the hospitals "knowingly entered into a kick-back arrangement to cause claims to be presented which

8

would not have been paid" had the government known about the underlying discount/referral system. Therefore, we reject this argument.

Next, Loretto and Holy Cross argue that the relators have not alleged any facts to support a claim against them under the Illinois Whistleblower Reward and Protection Act for any false claims submitted to the State of Illinois. However, we find that the relators have properly alleged a cause of action under the Whistleblower Act. The Second Amended Complaint alleges that "[b]y reason of the false claims presented or caused to be presented by Defendant CoMed the State of Illinois has incurred damages to be proven at trial." Thus, it is alleged, or at least implied, that false claims were submitted to the State of Illinois which caused the State to be damaged. We find that this allegation is sufficient to withstand the motion to dismiss.

Finally, Holy Cross argues that "CoMed's exclusive contract was not an improper referral arrangement." The gist of Holy Cross' argument is that, when the operation of these contracts is subjected to the appropriate scrutiny, there are no facts alleged that would establish that Holy Cross knowingly violated the Anti-Kickback Statute or knowingly falsified the certification required under its cost report. However, we find that the relators' Second Amended Complaint alleges numerous facts which could establish that Holy Cross knowingly violated the Anti-Kickback Statute and knowingly falsified the certification required under its cost report. Accordingly, we deny Holy Cross' motion to dismiss on this point.

For all of these reasons, we deny Holy Cross' and Loretto's motions to dismiss the relators' Second Amended Complaint.

II.     Defendants' Motion To Dismiss Counts III and IV Of
        United States Amended Complaint

Defendants CoMed, Tower Ambulance Service, Daley's Ambulance Service, John Daley,

III, Thomas Wappel, Estate of John Daley, Jr., and Brian Witek have filed a motion to dismiss

Count III (payment by mistake of fact) and Count IV (unjust enrichment) of the United States'

Amended Complaint. Defendants argue that because Counts I, II and V (False Claims Act and

common law fraud counts) provide adequate remedies at law, the United States is precluded from

maintaining its equitable causes of actions. Therefore, they claim that Counts III and IV must be

dismissed.

We find that the United States' Amended Complaint alleges multiple, alternative causes

of action, including payment by mistake of fact and unjust enrichment, as permitted by

Fed.R.Civ.P. 8(e)(2). Rule 8(e)(2) explicitly provides that a party may state as many separate

claims or defenses as he has regardless of consistency and whether based on legal or equitable

grounds. Rule 8(e) recognizes that "flexible pleading [is] essential to a full presentation of all

relevant facts and legal theories at trial and final settlement of disputes on their merits." *United

States v. G & H Machinery*, 92 F.R.D. 465, 466 (S.D. Ill. 1981). *See also Cleveland v. Policy

Management Systems Corp.*, 526 U.S. 795, 804 (1999) (Rule 8(e)(2) recognizes "that a person

may not be sure in advance upon which legal theory she will succeed.") Rule 8(e)(2) permits a

plaintiff to set forth inconsistent legal theories in its pleading without being forced to select a

single theory on which to seek recovery.

For these reasons, defendants' motion to dismiss Counts III and IV of the United States'

Amended Complaint is denied.

10

III. Estate Of John Daley, Jr.'s Motion To Dismiss

John Daley, Jr. was a named defendant in the original actions filed by the United States and the relators. On February 18, 2001, John Daley, Jr. died. On September 19, 2001, the United States moved to substitute the Estate of John Daley for the deceased, John Daley, Jr. We granted the motion on September 25, 2001. The Estate has now filed a motion to dismiss the United States Amended Complaint and the relators' Second Amended Complaint on two bases: 1) the substitution is untimely; and 2) even if found to be timely, the counts alleging violation of the False Claims Act, 31 U.S.C. § 3729 ("FCA") must be dismissed against the Estate because these counts are punitive in nature and cannot survive the death of John Daley, Jr.

The Estate first argues that, under Rule 25(a), substitution of the Estate must be made within 90 days of the death of a party being suggested upon the record. Rule 25(a)(1) provides that "[i]f a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. . . . Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party."

In this case, no representative of John Daley, Jr. ever filed a statement of the fact of the death, as is required by Rule 25(a)(1). Instead, the lawyers for John Daley, Jr. tried to sneak in notice of the death in a footnote in an April 13, 2001 response brief filed on behalf of CoMed and all the individual defendants, including the decedent. The Estate argues that Daley's death was made of record on April 13, 2001 in this obscure footnote. The Estate further argues that despite the fact that John Daley, Jr.'s death was suggested on the record on April 13, 2001, neither the

11

relators nor the United States made any attempt to substitute the Estate of John Daley, Jr. as a party defendant for the deceased defendant within 90 days thereafter, as required by Fed.R.Civ.P. 25(a)(1).

We find the Estate's arguments to be without merit. Even assuming that John Daley, Jr.'s death was made of record in a footnote on April 13, 2001, we find that it was excusable neglect for the relators and the United States not to notice the fact of the death mentioned only in a footnote. The representatives of John Daley, Jr. never filed any other notice of the death with this court. Thus, we reject the Estate's suggestion that they "clearly and unequivocally" suggested the death of John Daley, Jr. upon the record on April 13, 2001. We simply do not find a passing reference to Daley's death in a footnote in a response brief to constitute "clear and unequivocal" notice of his death.[1]

Moreover, the fact that, after Mr. Daley died, his attorneys continued to file papers on his behalf created a reasonable belief in the United States and the relators that the Estate would be substituted without objection. Indeed, the attorneys for Mr. Daley filed several motions to dismiss the complaints on his behalf even after his death. On March 6, 2001, sixteen days after his death, a motion to dismiss was filed on behalf of Mr. Daley, and in May 2001, the defendants, including Mr. Daley, filed a reply memorandum in support of the multiple motions to dismiss.

In addition, the Estate has failed to point to any potential prejudice for the failure to meet the time period set forth under Rule 25(a). The same attorney has continuously represented all

---

[1]    Indeed, this Court never employs footnotes because they often are a distraction from the narrative of the brief. Accordingly, we assume that many will similarly ignore this footnote.

the defendants. Therefore, the Estate's motion to dismiss on the basis that the substitution is untimely is denied.

The Estate next argues that the relators' and the United States' causes of action under the False Claims Act and the Illinois Whistleblower Reward and Protection Act are abated under 28 U.S.C. § 2404 because such claims seek damages that are punitive in nature which cannot survive the death of John Daley, Jr.

28 U.S.C. § 2404 provides:

> A civil action for damages commenced by or on behalf of the United States . . . shall not abate on the death of a defendant but shall survive and be enforceable against his estate as well as against surviving defendants.

We find that the actions commenced by the United States and the relators in this case are "a civil action for damages." Therefore, we deny the Estate's motion to dismiss on this point.

## CONCLUSION

For the foregoing reasons, we deny the motions of Loretto Hospital (# 117) and Holy Cross Hospital (# 115) to dismiss the relators' Second Amended Complaint. We also deny the motion of defendants CoMed, Tower Ambulance Service, Daley's Ambulance Service, John Daley, III, Thomas Wappel, the Estate of John Daley, Jr., and Brian Witek to dismiss Counts III and IV of the United States' Amended Complaint (# 103). Finally, we deny the motion of the Estate of John Daley, Jr. to dismiss the United States' Amended Complaint and the relators

13

Second Amended Complaint (# 105 ).  This case is set for status on September 24, 2002 at 9:00

a.m.

Wayne R. Andersen
United States District Judge

Dated: September 6, 2002